UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

ANTWANN CARTER,

*Defendant.*

No. 19-cr-261 (DLF)

## MEMORANDUM OPINION

On September 1, 2021, this Court found that Antwann Carter "suffer[s] from a mental disease or defect that renders him unable to understand the nature and consequences of the [criminal] proceedings against him." Order of September 1, 2021, at 1, Dkt. 51. Consistent with the Insanity Defense Reform Act (IDRA), the Court thus ordered that Carter be committed "to the custody of the Attorney General . . . to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." *Id.* (quoting 18 U.S.C. § 4241(d)(1)). IDRA requires the Attorney General to make that determination in a "reasonable time, not to exceed four months." 18 U.S.C. § 4241(d)(1).

Since August 30, 2021, this Court has repeatedly informed the government that it lacks the authority to extend that four-month period. *See, e.g.*, Hr'g Tr., Nov. 2, 2021, at 3–4, Dkt. 70, at 3; Hr'g Tr. Aug. 30, 2021, at 5, Dkt. 69. Despite the Court's warnings, the government has not complied with IDRA's deadline and represents that February 14, 2022 is the soonest that the U.S. Marshals can transfer Carter to a suitable facility. *See* Rough Hr'g Tr., Jan. 10, 2022, at 3. This date is well beyond the "four months" that IDRA allows, 18 U.S.C. § 4241(d)(1). Accordingly, after briefing and oral argument, this Court held that the government's delay in transporting Carter violated IDRA's terms. *See* Rough Hr'g Tr., Jan. 10, 2022, at 10–13. The

Court further held, consistent with the Supreme Court's decision in *Jackson v. Indiana*, 406 U.S. 715 (1972), that the appropriate remedy for that violation required either the commencement of civil commitment proceedings or Carter's release. *See id.* at 13–16; *see also* Minute Order of Jan. 19, 2022. This opinion explains that Order's reasoning.

I.   BACKGROUND

   A.   Initial Proceedings

On August 1, 2019, a federal grand jury charged Carter with one count of carjacking, in violation of 18 U.S.C. § 2119(1); one count of using, carrying, and possessing a firearm in a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and one count of aggravated assault while armed, in violation of D.C. Code §§ 404.01 and 4502. *See* Indictment, Dkt. 2. Carter was arrested several days later. *See* Arrest Warrant, Dkt. 5. Magistrate Judge Harvey then held a detention hearing and ordered that Carter be held without bond. *See* Order of Detention Pending Trial, Dkt. 8. His order reasoned that the weight of the evidence against Carter was strong, that his criminal history favored detention, and that his release would pose a danger to the community. *See id.* at 11–13.

   B.   Competency Proceedings

On November 8, 2019, this Court ordered a preliminary assessment of Carter's competence to stand trial. *See* Order of Nov. 8, 2019, Dkt. 11. The assessing psychologist, Dr. Teresa Grant, was "unable to form a definitive opinion" on that question. *See* Forensic Screening Report at 4, Dkt. 12. She explained that it was "unclear" whether his responses to her questioning reflected a cognitive impairment or "malingering, []given the severity of his charges." *Id.* But she agreed to perform an additional evaluation at a later date. *See* Motion to

Continue at 1, Dkt. 16 (describing that agreement); Order of Nov. 27, 2019, Dkt. 15 (allowing that additional evaluation).

On November 27, 2019, Dr. Elizabeth Teegarden conducted a separate assessment of Carter, in connection with his separate charges in D.C. Superior Court. *See* Teegarden Report, Dkt. 18. She determined that Carter was "incompetent to stand trial" because "his overall cognitive functioning was on the concrete level and he did not benefit from [her] attempts to instruct him about the relevant legal issues." *Id.* at 3. She accordingly recommended that Pretrial Services conduct a full competency evaluation. *See id.*

On January 23, 2020, Dr. Grant submitted her supplementary report on Carter's competency. *See* Second Grant Report, Dkt. 78. This report concluded that Carter was "competent to stand trial and likely malingering[,] possibly to avoid consequences and/or to thwart his criminal proceeding." *Id.* at 5. The report also represented that Dr. Teegarden, after an additional examination of Carter and in consultation with Dr. Grant, had reached the same conclusion. *See id.* at 3–5.

On October 6, 2020, following delays occasioned by the coronavirus pandemic, the defense informed the Court that it had retained its own expert to assess Carter's competence. *See* Rough Hr'g Tr., Oct. 6, 2020, at 2–3. The expert, Dr. Jonathan DeRight, was not able to examine Carter until February 5, 2021, because D.C. Jail had restricted in-person visits on account of the pandemic. *See id.* at 2; Joint Status Report, Dkt. 30. Dr. DeRight ultimately concluded that Carter "has significant cognitive limitations that affect his ability to understand factual and rational factors of legal proceedings and to assist in his own defense." DeRight Report at 1, Dkt. 35. He also concluded that Carter's competence was unlikely to be restorable,

3

both because Carter's "limitations [were] cognitive in nature" and because he showed "little improvement over many years." *Id.*

On March 16, 2021, the defense moved for a competency hearing pursuant to 18 U.S.C. § 4241(a). *See* Def.'s Mot. for a Competency Hr'g, Dkt. 32. Section 4241(a) requires such a hearing when "there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). Upon review of the record before it, the Court made that finding and granted the defense's motion. *See* Rough Hr'g Tr., Mar. 17, 2021, at 7–8. The Court initially scheduled that hearing for July 6, *see id.* at 15–16, then continued it until July 23 at the parties' request, *see* Joint Status Report, Dkt. 36.

Before the competency hearing, the defense represented that it would call Dr. DeRight as an expert witness, and the government represented that it would call Drs. Grant and Teegarden. *See* Def.'s Notice of Expert Witness, Dkt. 42; Gov't's Notice of Expert Witnesses, Dkt. 43-1. At the hearing, however, the government opted instead to "concede [Carter's] incompetence." Hr'g Tr., July 23, 2021, at 3, Dkt. 68. The government explained that, although all three experts identified some "indication of feigning or exaggerate[ing]" symptoms, they also raised "evidence of [his] intellectual deficit and create some concern with regard to his competency." *Id.* The government thus agreed to a "proceed to a full [competency] examination under [18 U.S.C. § 4241(d)]." *Id.* The defense, for its part, made additional representations that tended to strengthen a finding of incompetence. For example, defense counsel represented that Carter "was found incompetent in several [], juvenile cases," that he "consistently scored between 50

and 60 on his IQ tests," and that his "IEPs up until about a year before [his offense] had him in the first and second grade reading level."[1]  *Id.* at 6–8.

On September 1, 2021, this Court found "by a preponderance of the evidence that [Carter] is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  18 U.S.C. § 4241(d); *see* Order of Sept. 1, 2021, at 1.  The Court accordingly "commit[ed] [him] to the custody of the Attorney General," 18 U.S.C. § 4241(d)—effective the same day.  *See* Order of Sept. 1, 2021.  Under IDRA, that Order required "the Attorney General [to] hospitalize [Carter] for treatment in a suitable facility . . . for such a reasonable period of time, not to exceed four months, as is necessary to determine whether" his competence may be restored.  *Id.* § 4241(d)(1).  IDRA authorizes the Attorney General to continue to hospitalize the defendant "for an additional reasonable period of time" but only if there is a "substantial probability" that is competence may be restored.  *Id.* § 4241(d)(2).

### C.   The Government's Delay

Before the Court issued the above Order, this Court explained that the government would need to evaluate Carter within the "four months" that IDRA permits.  *See* Hr'g Tr., Aug. 30, 2021, at 5.  The Court addressed the issue because the defense represented that there was an over four-month wait for placement at FMC Butner, *see* Def.'s Mot. for Restoration Treatment at 1–2, Dkt. 47—the facility at which the government was mostly likely to evaluate Carter, *see* Hr'g Tr.,

---

[1] "IEP" stands for "individualized educated program," which is a term of art in the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq*.  That statute entitles each qualifying student to an education tailored to his IEP—a document that describes his "present levels of academic achievement," his "measurable annual goals," and "the special education and related services . . . to be provided to [him]."  20 U.S.C. §§ 1401(9)(D), 1414(d)(1)(A)(i).

July 23, 2021, at 4.  Given that backlog, the defense recommended hospitalizing Carter at a local facility, St. Elizabeths Hospital.  *See* Def.'s Mot. for Restoration Treatment at 2.  Although the government expressed safety concerns regarding St. Elizabeths, *see* Gov't's Status Report, Dkt. 48, Carter had already been committed there in connection with his Superior Court case, *see* Def.'s Mot. for Restoration Treatment at 3 (citation omitted), and the hospital regularly treats other violent individuals—including, at present, "at least five people charged with murder I," Def.'s Response to Court Order at 5, Dkt. 77; *see* Superior Court Dockets, Dkt. 72-3.  Accordingly, the Court "encourage[d] the [government] to take a close look at whether [Carter's] treatment and evaluation could be done [at St. Elizabeths] without creating a security risk."  Hr'g Tr. Aug. 30, 2021, at 5.  It further expressed "concern[]" that the government would not meet IDRA's four-month "deadline if [Carter] is transported to Butner."  *Id.*

On September 30, 2021, the government represented in a status report that Carter had been "designated for transfer [from D.C. jail] to Butner no later than February 2022."  *See* Gov't's Status Report, Dkt. 53.  It also reported identical wait times at FMC Springfield and FMC Devens—the other BOP facilities that can perform restoration services.  *See* Gov't's Status Report, Dkt. 54.  During a status hearing several days later, the Court explained that this timeline "creates a problem under [IDRA] given the deadlines that are set in the statute."  Rough Hr'g Tr., Oct. 2, 2021, at 3.  The Court added that, if the government continued its present course, it would need to be prepared to brief whether IDRA "permits any extensions beyond four months."  *Id.*

On January 10, 2022, the government represented that it had not transferred Carter to Butner.  *See* Rough Hr'g Tr., Jan. 10, 2022, at 3.  The government also proffered a likely transfer date of February 14, 2022, *see id.*, which is over five months after this Court committed Carter to the custody of the Attorney General.

6

### D. The Defense's Speedy Trial Motion

As the government approached IDRA's four-month deadline, the defense moved to dismiss Carter's indictment under the Speedy Trial Act, 18 U.S.C. § 3161. *See* Def.'s Speedy Trial Mot., Dkt. 66. That Act requires that a defendant's trial commence "within seventy days" of the filing of his indictment, 18 U.S.C. § 3161(c)(1), excluding certain enumerated "periods of delay," *id.* § 3161(h). Both parties agreed that only seven days of Speedy Trial time had expired before September 1, 2021. *See* Def.'s Speedy Trial Mot. at 3; Gov't's Opp'n at 3, Dkt. 71. They disagreed, however, about whether the time since September 1, which well exceeds seventy days, is excludable under § 3161(h) of the Act.

The parties' disagreement turned on the meaning of § 3161(h)(4), which requires the exclusion of "[a]ny period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial." 18 U.S.C. § 3161(h)(4). The government argued that this section requires excluding the entirety of the time after September 1, 2021, on the ground that this Court found Carter to be incompetent to stand trial. *See* Gov't's Opp'n at 2–3. The defense argued that 3161(h)(4) is limited by § 3161(h)(1)(F), which requires excluding certain transportation delays subject to the caveat that "any time consumed in excess of ten days . . . shall be presumed to be unreasonable." *See* Def's Speedy Trial Mot. at 6–8 (quoting 18 U.S.C. § 3161(h)(1)(F)). The defense read § 3161(h)(1)(F) to say that only ten days of the government's transportation delay were excludable. *See id.*

On January 10, 2022, this Court denied the defense's motion to dismiss Carter's indictment on speedy trial grounds. In ruling that § 3161(h)(4) required the exclusion of all time after September 1, 2021, *see* Rough Hr'g Tr., Jan. 10, 2022, at 5–10, the Court explained that the delay in transporting Carter falls within that provision's text because it "results from the fact that

7

he is mentally incompetent." *Id.* at 5 (quoting 18 U.S.C. § 3161(h)(4)). The Court also rejected the defense's textual counterarguments. *See id.* at 6–9 (concurring with *United States v. Beler*, 2019 WL 5789747 (D.D.C. 2019), and *United States v. Romero*, 833 F.3d 1151 (9th Cir. 2016)). The Court added that its conclusion was consistent with the Supreme Court's due process jurisprudence, which has "repeatedly and consistently recognized that the criminal trial of an incompetent defendant violates due process." *Id.* at 6 (citing *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996)). And finally, the Court emphasized that its interpretation of the Speedy Trial Act was consonant with IDRA. *See id.* at 10.

On that last point, the Court reasoned that the Speedy Trial Act and IDRA "work together to require the timely resolution of cases like this one." *Id.* at 10. The Speedy Trial Act required the parties to proceed expeditiously "before Mr. Carter was found to incompetent." *Id.* Now, after that finding, "IDRA requires the government to reach a decision on whether he can be restored to competence within a period 'not to exceed four months.'" *Id.* (quoting 18 U.S.C. § 4241(d)(1)). In this way, the Court explained, "[t]he specific time-limit in IDRA [] tempers the broad exclusion under subsection (h)(4) of the Speedy Trial Act." *Id.*

### E.   The Defense's IDRA Motion

At the January 10, 2022 hearing, the Court also considered the defense's IDRA motion, *see id.* at 10–11, which became ripe for review on January 5, 2022, *see* Gov't's Opp'n to Def.'s IDRA Mot., Dkt. 74; Def.'s IDRA Reply, Dkt. 75. In this motion, the defense moved to dismiss Carter's indictment on the ground that the government exceeded IDRA's four-month time limit, in violation of § 4241(d)(1). *See* Def.'s IDRA Mot., Dkt. 72. The defense also represented, however, that Carter would remain subject to civil commitment under District of Columbia law and, indeed, that he "[sought] to be placed in local civil confinement." *Id.* at 16; *see also id.* at

8

15 ("Dangerousness concerns must now be addressed by civil commitment under D.C. law."). Accordingly, the defense asked the Court to dismiss Carter's indictment but hold its order in abeyance so that those local proceedings could begin. *See id.* at 17–18.

The Court ruled that the government had violated § 4241(d)(1). *See* Rough Hr'g Tr., Jan. 10, 2022, at 10–13. The Court also held, for a remedy, that the government was required to either commence civil commitment proceedings against Carter or release him. *See id.* at 13–16. Finally, the Court gave the government one week to determine whether it would pursue civil commitment and, if so, in what jurisdiction. *See id.* at 27. In response, the government filed a motion to reconsider the Court's ruling. *See* Gov't's Mot. for Recons. at 2–6, Dkt. 76. It also took the positions, first, that federal civil commitment was unripe under the terms of 18 U.S.C. § 4246(a) and, second, that local civil commitment was unavailable because Carter's case was brought in federal court. *See id.* at 7–10.

On January 19, 2022, the Court granted the defense's IDRA motion in an oral ruling, *see* Rough Hr'g Tr., Jan. 19, 2022, and modified its order in a subsequent Minute Order, *see* Minute Order of Jan. 19, 2022. The Court's Order directed both the dismissal of Carter's indictment and his release. But the Court held the Order in abeyance until February 18, 2022, in the event that the government elected to pursue local civil commitment, as the defense had requested. *See id.* The Court also noted that the abeyance would allow the government to pursue an emergency appeal, if it chose to do so. *See id.*

The reasons for this Court's Order and its interpretation of the relevant IDRA provisions are set forth below.

## II.    LEGAL ANALYSIS

As outlined above, IDRA allows for the hospitalization of incompetent defendants to determine whether their competency may be restored. *See* 18 U.S.C. § 4241(d). Before such hospitalization, a court must find "by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *Id.* From there, the court "shall commit the defendant to the custody of the Attorney General," and "[t]he Attorney General shall hospitalize the defendant for treatment in a suitable facility." *Id.* That hospitalization may last "for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." *Id.* § 4241(d)(1). The Attorney General may continue to hospitalize the defendant "for an additional reasonable period of time until" either "his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that" his competency will be restored "or the pending charges against him are disposed of according to law." *Id.* § 4241(d)(2).

## III.   ANALYSIS

### A.     The Delay in Transporting Carter for Examination Violated IDRA

The government violated IDRA because it failed to assess whether Carter's competence could be restored "in a reasonable period of time, not to exceed four months." 18 U.S.C. § 4241(d)(1). Because this Court committed Carter to the custody of the Attorney General on September 1, 2021, IDRA required the government to make its restorability assessment on or before January 1, 2022. *See id.* But the government did not do so. Instead, as of January 10,

10

2022, the government had not even transported Carter to a facility where such a determination could be made. *See* Rough Hr'g Tr., Jan. 10, 2022, at 3.

IDRA does not authorize the Court to extend its four-month deadline. As this Court explained in *United States v. Gamarra*, 308 F. Supp. 3d 230 (D.D.C. 2018), the phrase "not to exceed four months," 18 U.S.C. § 4241(d)(1), forecloses extensions. *See Gamarra*, 308 F. Supp. 3d at 233. And the fact that § 4241(d)(2)(A) describes a more flexible timeline—allowing hospitalization for an "additional reasonable period of time" to restore certain defendants' competence—confirms that § 4241(d)(1) creates a firm, absolute deadline. *See Russello v. United States*, 464 U.S. 16, 23 (1983). The Court accordingly concludes that the extensive delay in transporting Carter violated the statutory deadline in § 4241(d)(1).

The plain text of § 4241(d)(1) defeats the government's contrary interpretation, *see* Mot. for Recons. at 4–6. In the government's view, IDRA's four-month period does not begin until the "Defendant is [physically] hospitalized for treatment in a suitable facility." *Id.* at 4–5. But the plain text of § 4241(d)(1) provides that the government "shall hospitalize" an incompetent defendant as soon as the government obtains "custody" over him. 18 U.S.C. § 4241(d)(1). The government obtained custody over Carter, within the meaning of that provision, on September 1, 2021. And § 4241(d)(1) does not mention delays in transporting defendants for hospitalization, let alone subject them to a different timetable. *See id.* Accordingly, to the degree that § 4241(d)(1) allows the government to delay defendants' transportation, those delays must be a part of the "reasonable period of time, not to exceed four months." *Id.* Likewise, the government may not delay the four-month deadline by detaining an incompetent defendant in a non-hospital setting.

The Court's ruling on this issue is also consistent with the Speedy Trial Act. In denying

11

the defense's speedy trial motion, this Court explained that the Act and IDRA work together to require the timely resolution of cases like this one: Whereas the Speedy Trial Act requires the parties to work quickly before a finding of incompetence, IDRA requires the government to work quickly thereafter. *See* Rough Hr'g Tr., Jan. 10, 2022, at 10. The government's reading of § 4241(d)(1), however, would create a substantial hole in this statutory scheme. Under that reading, defendants in Carter's position would lack any statutory recourse against potentially indefinite delays in transporting them to a suitable facility. *See* Mot. for Recons. at 4–5. It is hard to imagine that Congress, which passed § 4241 to codify the Supreme Court's due process precedents, *see United States v. Magassouba*, 544 F.3d 387, 403 (2d Cir. 2008), intended such a result.

Moreover, although the government cites several cases to show that the § 4241(d)(1) timer begins only with hospitalization, none of them persuade. In *United States v. Evans*, 690 F.3d 940 (8th Cir. 2012), the "only argument on appeal [was] that the [§ 4241(c)] hearing was inadequate." *Id.* at 944. *United States v. Villegas*, 589 F. App'x 372 (9th Cir. 2015), did not concern a prolonged transportation delay and had no reason to address the government's distinction between transportation and hospitalization. *See id.* at 373. Finally, the core holding in *Magassouba* was that the government violated § 4241(d)(1) by hospitalizing a defendant for over four months. *See* 544 F.3d at 410. And although that case also held that § 4241(d)(1) did not apply to certain transportation delays, on the theory that detention pending those delays was authorized by Bail Reform Act, 18 U.S.C. § 3142, it did not address many of the considerations discussed above. *See* 544 F.3d at 412–13. For example, *Magassouba* did not consider that, while the Speedy Trial Act generally limits detention under the Bail Reform Act, only IDRA can limit detention after a finding of incompetence. *See supra.* In addition, the case took no position

12

on whether its approach to transportation delays would apply in "factually distinguishable" circumstances, 544 F.3d at 413, such as those presented here. In *Magassouba*, the defendant was subject to a two-month transportation delay, and the district court later found a "substantial probability that [he] will attain competency with appropriate medication." *Id.* at 412, 414. Here, in contrast, the government proposed a five-month transportation delay. *See* Rough Hr'g Tr., Jan. 10, 2022, at 3. This Court also has not made any finding regarding Carter's restorability, nor could it do so on the current record. The Court accordingly declines to adopt *Magassouba*'s approach to transportation delays.

      The Court also declines to adopt the government's interpretation of § 4241(d)(2)(B), which the government raised for the first time in its motion for reconsideration. *See* Mot. for Recons. at 5. Section 4241(d)(2) permits hospitalizing a defendant "for an additional reasonable period of time until" either "his mental condition is so improved that trial may proceed," if there is a substantial probability that his competence is restorable, or "the pending charges against him are disposed of according to law." 18 U.S.C. § 4241(d)(2)(B). The government suggests that the latter clause applies here because Carter's pending charges remain open. *See* Mot. for Recons. at 5. But the government never argues that its delay in transporting Carter was "reasonable," as § 4241(d)(2)(B) requires. And it is hard to imagine that the government could make such a showing, considering that it could have examined Carter at St. Elizabeths.[2] Moreover, taking the government's position at face value would create surplusage. If a defendant may be hospitalized until the charges against him "are disposed of according to law," *id.* § 4241(d)(2)(B), with no further limitations, then the four-month limit on restorability examinations in § 4241(d)(1) would

---

[2] The government concedes that, if it pursues civil commitment under 18 U.S.C. § 4246, "it is likely that [Carter] will be committed to St. Elizabeth's." Mot. for Recons. at 10 n.6.

have no effect.  The Court will not interpret § 4241(d)(2)(B) in a manner that would render § 4241(d)(1) "insignificant, if not wholly superfluous."  *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citation omitted).

For the reasons above, the Court holds that the delay in transporting Carter for hospitalization violated § 4241(d)(1).  The Court must accordingly address what remedy is appropriate for that violation.

### B. The Appropriate Remedy for This Violation Requires the Government to Either Pursue Carter's Civil Commitment or Release Him

The plain text of section 4241(d)(1) does not prescribe a remedy for violating its terms.  Accordingly, because Congress enacted the provision "in response to [*Jackson v. Indiana*, 406 U.S. 706]," *United States v. Strong*, 489 F.3d 1055, 1061 (9th Cir. 2007), the Court looks to the remedy that *Jackson* contemplated.  As relevant here, *Jackson* held that an incompetent defendant may not be held for "more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain th[e] capacity [to proceed to trial] in the foreseeable future."  *Jackson*, 406 U.S. at 738.  Section 4241(d)(1) closely follows that language, adding only a four-month deadline.  *See* 18 U.S.C. § 4241(d)(1) (providing that a defendant may be held for a "reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward"); *see also Strong*, 489 F.3d at 1061 (noting that § 4241(d) "echoed *Jackson*'s language").  *Jackson* then held that, "[i]f it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant."  406 U.S. at 738.  For present purposes, because § 4241(d)(1) so closely

follows the first sentence from *Jackson*, the decision's second sentence sheds light on the appropriate remedy.  Following *Jackson*, the most natural remedy for a violation of § 4241(d)(1) is thus either commencing civil commitment proceedings or dismissing the defendant's indictment.[3]

That conclusion is consistent with the text of § 4241(d).  That provision states that, "[i]f, at the end of the time period specified [in §§ 4241(d)(1) and 4241(d)(2)], it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of [18 U.S.C. §§ 4246 and 4248]."  18 U.S.C. § 4241(d).  Section 4246 allows for the civil commitment of persons whose release "would create a substantial risk of bodily injury to another person or serious damage to property of another."  *Id.* § 4246(a).  Section 4248, in turn, allows for the commitment of "sexually dangerous person[s]."  *Id.* § 4248(a).  Both provisions apply *inter alia* when "all criminal charges [against a person] have been dismissed solely for reasons relating to the mental condition of the person."  *Id.*; *accord id.* § 4246(a).  The availability of those provisions after the "time period specified" in § 4241(d)(1) thus suggests that exceeding that time period requires the end of criminal proceedings.[4]  *Id.* § 4241(d).

---

[3] The Court recognizes that the Second Circuit in *Magassouba* suggested that the appropriate remedy for violating § 4241(d)(1) is granting a writ of habeas corpus, as opposed to dismissing an indictment.  *See* 544 F.3d at 411 n.16.  But the Court will not address that argument here because the government never raised it.  Moreover, releasing Carter on habeas would effectively end his criminal prosecution, as the government cannot try an incompetent defendant, *see Cooper*, 517 U.S. at 354, and the government has exceeded IDRA's 4-month time limit for assessing Carter's restorability, *see* 18 U.S.C. § 4241(d)(1).  Thus, in this case, there is no practical difference between ordering Carter's release or the dismissal of the indictment.

[4] Section 4241(d) provides only that a defendant "is subject to" §§ 4246 and 4248, which does not make those provisions the exclusive remedies for violating its terms.  18 U.S.C. § 4241(d).  Moreover, the federal government may pursue civil commitment under § 4246 only if it certifies that "suitable arrangements for State custody and care of the person are not available," *id.*

To be sure, this Court has held in *Gamarra* that violations of § 4241(d)(1) can be harmless. *See* 308 F. Supp. 3d at 233–34; *see also* Fed. R. Crim. P. 52(a). But in finding that such an error was harmless, *Gamarra* relied on the fact that, if the defendant "had not been confined for evaluation, he likely would have remained in pretrial detention, with the same level of deprivation to his liberty rights." *Id.* at 233. That is not true here. If Carter had not been committed to the custody of the Attorney General, or if the government had promptly found him to be competent, he likely would have gone to trial in December. Indeed, trials were occurring in this courthouse at that time, and this Court had scheduled a trial in that month for another defendant who had been incarcerated for just as long as Carter. And even assuming that the government would have transported Carter to Butner on February 14, as it represented, *see* Rough Hr'g Tr., Jan. 10, 2022, at 3, Carter's examination would then have been delayed for five months, primarily (if not exclusively) because of backlogs at that facility. Any examination to assess the likelihood of restoring his competency would necessarily have taken additional time. Thus, the total delay in Carter's case would have extended well beyond the four months that have already lapsed. The Court need not wait out that lapse to find that Carter's rights have been substantially affected, as the government's delay has already substantially increased the time that he will be in pretrial detention. Moreover, no physician has examined Carter, as § 4241(d)(1) contemplates. And the Court has been unable to take the steps necessary to bring this case any closer to either trial or civil commitment. In these circumstances, the Court concludes that the government's delay has affected Carter's substantial rights.[5]

---

§ 4246(a). Thus, the availability of commitment under § 4246 suggests the simultaneous availability of commitment under state law.

[5] Because the Court concludes that the instant delay was not harmless, it has no occasion to consider whether a violation of § 4241(d) necessarily affects substantial rights. *Cf. United States*

16

*Gamarra* is also distinguishable because it ordered a remedy that would be ineffective here. That case held that the "proper remedy" for a violation of § 4241(d)(1) was "to ensure a speedy evaluation under § 4241(d)(2)." *Gamarra*, 308 F. Supp. 3d at 233. But as discussed above, over the past five months, this Court has repeatedly warned the government about its obligations under § 4241(d)(1). *See, e.g.*, Hr'g Tr., Nov. 2, 2021, at 3–4, Dkt. 70, at 3–4; Hr'g Tr. Aug. 30, 2021, at 5. The government nonetheless failed to either expedite Carter's transport to FMC Butner or hospitalize him at St. Elizabeths. And as late as January 18, 2022, the government requested additional time to research operational questions for the Court's consideration. *See* Mot. for Recons. at 8 (raising, for the first time, the possibility of "the hiring of experts to examine Defendant at D.C. Jail" and "request[ing] the opportunity to brief the Court as to the appropriate procedures" for doing so). Under those circumstances, the Court finds that encouraging a speedy evaluation under § 4241(d)(1) would have no practical effect.

For the reasons above, this Court holds that the appropriate remedy in this case requires that the government either pursue civil commitment or dismiss Carter's indictment. The defense, for its part, has represented that Carter "seeks to be placed in local civil confinement," Def.'s IDRA Mot. at 16, and that it would not object to civil commitment proceedings in D.C. Superior Court, see Rough Tr., Jan. 10, 2022, at 29. In addition, to facilitate those proceedings, the defense asked the Court to dismiss Carter's indictment "but hold the execution of that order in abeyance for no more than thirty days." Def.'s Response to Court Order at 7. Consistent with that request, the Court ordered the dismissal of Carter's indictment but held that order in

---

*v. Taplet*, 776 F.3d 875, 881 (D.C. Cir. 2015) (holding that "[d]ue to its mechanical nature, a meritorious [Speedy Trial Act] claim . . . will always affect substantial rights").

17

abeyance until February 18, 2022, with the understanding that the government might elect to initiate civil commitment proceedings before that date.[6]  *See* Minute Order of Jan. 19, 2022.

*     *     *

Throughout this case, the government has cautioned that releasing Carter would endanger the community.  The Court shares the government's concerns.  Indeed, Magistrate Judge Harvey made that very finding in detaining Carter pending trial, *see* Order of Detention Pending Trial, at 11–13, and this Court reached the same conclusion in denying an emergency motion to release him, *see* Minute Order of Apr. 16, 2020.

Since September 1, 2021, however, when the Court granted the parties' joint motion to commit Carter for a competency assessment, the ball has been squarely in the government's court.  The government failed to meet IDRA's four-month deadline for an assessment.  The government still seeks to assess Carter at a backlogged facility.  And now, as a result of its own actions, the government faces the choice of filing an unopposed motion to civilly commit Carter or releasing him from custody.

---

[6] To date, the government has taken the position that civil commitment is unripe under federal law and unavailable under District of Columbia law.  *See* Mot. for Recons. at 7–8, 10.  The Court tends to agree with the first point, as pursuing federal commitment requires a certification of dangerousness from "the director of [the] facility in which a person is hospitalized," 18 U.S.C. § 4246(a), which the government has not obtained, *see* Mot. for Recons. at 7.  But the government has provided no authority for its second point.  And the plain text of § 4246 allows federal civil commitment only if "suitable arrangements for State custody and care of the person are not available." 18 U.S.C. § 4246(a).  That language presupposes that the government may— and sometimes must—pursue state civil commitment before the federal equivalent.  It accordingly appears that the government may pursue local civil commitment in this case, should it elect to do so.

## CONCLUSION

For the reasons above, the defendant's Motion to Dismiss, Dkt. 72, is granted. However, this order will be held in abeyance until February 18, 2022, so that the government may pursue civil commitment.

January 27, 2022

                                                DABNEY L. FRIEDRICH
                                                United States District Judge